The opinion of the court? was delivered by

Mr. Justice Cole oak.

I shall consider the second ground taken in the brief, first.
A full and fair disclosure of all the circumstances relating to the intended voyage, which may in any degree influence the determination of the underwriters in undertaking the risk or estimating the premium, should be made known to the underwriters; and a concealment which is only the effect of accident, negligence, inadvertence or mistake, will, if material, be equally fatal to the contract as if it were intentional and fraudulent.
The law being thus stated, I will enquire, 1st. Whether there was a concealment of á fact; if so, 2d. Whether ■ it was a material fact; and 3d. Whether it was of that character which underwriters are bound to know or abide the consequences resulting.
That there was a concealment, we need only look to facts disclosed and the offer. The ship had been loaded at the Havanna; she was lying in the stream here; yet this was not stated in the offer, which professes to disclose every circumstance necessary for the underwriters to know. Every witness *242 Called on the part of the defendant stated that it was a material fact, for that the having been loaded at the Havanna, and her cargo being in appearance at least Spanish property, would under the existing state of things, subject her to the capture and detention of the patriot privateers; and one witness expressly said, that to his knowledge, such privateers were cruising in the Mediterranean sea at the very time that this vessel passed; all agreed too, that the premium would necessarily have been increased. The Spanish provinces had thrown off their allegiance to the mother country; war actually existed between them. The Havanna was therefore to all intents and purposes a belligerent port. Under these circumstances, a Mediterranean- pass would not have secured the vessel against the patriot privateers, had they fallen in with her.
But it is said that if the fact were material, it is of that character which the underwriters are bound to know, and therefore need not have been disclosed. The slightest examination of the subject, will shew that this is incorrect. The underwriter needs not be told what lessens the risk agreed upon, or is understood to be comprised within the express terms of the policy; he needs not be told what is the result of political speculations or general intelligence; he is bound to know every cause which may occasion natural perils; as the difficulty of the voyage, the variations of the heavens, the probability of lightning, hurricanes, Sic. &c.” 1st. Marshall, p. 473, all of which are of a general or public nature: but a particular fact, relating alone to the vessel to be insured, although of such a description as' may come to the knowledge of the underwriters, is not such a fact as they are bound to know.
Again, it is said they must have known it, for their inspector saw the vessel, and she was announced in the news-papers as having arrived from the Havanna Now neither of these circumstances prove that they did know it; for as to the inspector, he expressly said he did not commuuicate it; and as to the news papers, although her arrival was announced, it was not said she was loaded. But suppose the fact to have been known to the insurers, it is still a misrepresentation on the part of the insured. *243 What is meant by an offer declaring that all material circumstances are disclosed? Why, it amounts to this! you need not enquire (as is your usual custom) into any matter relating to this vessel; you need not believe any thing you hear in relation to her, for we have told you the whole truth. How does it comport with this, for these very persons to say, ‘ but you did know, or should have known that we did not tell the truth.’ Again, suppose the underwriters could have been induced to believe the fact, that she was loaded and had been loaded at the Ka-vanna, may they not rationally have concluded that the insured meant to enter the vessel, discharge apart of the cargo, re-ship it and take a regular clearance; thus making outthe very risk insured; making it a voyage to commence here; making it in fact, the case stated in the offer. They certainly had a right to come to such a conclusion; for none other could have- excused the conduct.of the ensured. And I have no doubt that this was the truth of the case, that such was the intention of the insured when, the offer was made; but that some after considerations induced him to pursue another course; perhaps the expenses attendant on it, or some information which may have induced him to believe that the Mediterranean pass would be sufficient pro-' tection to the vessel.
It is contended however, that all this was matter for the consideration of the jury, and that the verdict ought not there- ■ fore to be disturbed. So much has been said in various cases by this court on that subject, that it is unnecessary now to enter into it. It is sufficient to remark, that when a verdict is clearly against evidence, it is the duty of the court to interpose, and that such is the case before us is sufficiently shewn. A new trial is therefore ordered on this ground.
On the first ground in the brief, that the voyage performed was not the voyage insured, or in other words that there was a breach of warranty, the court give no opinion. I am however individually, as well satisfied that there should be a new trial on this ground as on the ground of concealment. In ls¡f. Marshall 348, it is said, the breach of a warranty consists either in the falsehood of an affirmation or the non-performance of any *244 executory stipulation; in either case, the contract is void ab ini-tio, the warranty being a condition precedent; and whether the thing warranted was material or not, whether the breach of it proceeded from fraud, negligence, misfortune or any other cause, the consequence is the same. The warranty makes the contract hypothetical; that is, it shall be binding if the warranty be complied with. With respect to the compliance with warranties, there is no latitude, there is no equity. The only question is, has the thing warranted taken place or not. If not,' the insurer is not answerable for any loss, even though it did not happen in consequence of the breach of warranty. — > The testimony proved clearly that the words “ at and from” in this policy, must mean the terminus a quo of the voyage; that the vessel was receiving her cargo here and was to sail from this to Marseilles. Every witness who gave an opinion on the offer, said it was in the form and language of a ship ■commencing her voyage here. What is the language of the policy on the goods? “ Loading at Charleston” — and how is it possible to separate die policies? they were entered into at the same time, by the same parties; goods and yessel both destined to the same point; how is it possible that the fact of departure can be true as to one and false as to the other? how can it be ■said this was the loading port as to the goods but not as to the ship? nor can the case in my opinion be distinguished as to principle, from the case of Robertson & Thompson, vs. French. 4 East p. 130, It is unnecessary at present to take any further view of the question.
Toomer Prioleau, for motion.
Hunt, contra
The motion is granted. —
Bay, JVott, Johnson &/■ Huger. Justices, concurred.